UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE HOWELL,

     Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

Case No. 13-cv-13444
Honorable Laurie J. Michelson
Magistrate Judge Michael Hluchaniuk

---

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [24], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [17]**

---

Jamie Howell says he is unable to work primarily as a result of his mental impairments, which include anxiety, panic attacks, impulse control disorder, and Attention Deficit Hyperactivity Disorder ("ADHD"). The Commissioner of Social Security denied his applications for supplemental security income twice, in May 2010 and June 2012. Howell's appeal of the second denial is currently before this Court. The Court finds that the Administrative Law Judge ("ALJ") who determined that Howell did not meet the definition of disabled under the Social Security Act from May 2010 to June 2012 did not fail to apply the correct legal standard or make findings of fact unsupported by substantial evidence. Therefore, Plaintiff's Motion for Summary Judgment (Dkt. 17) is **DENIED**, Defendant's Motion for Summary Judgment (Dkt. 24) is **GRANTED**, and the findings of the Commissioner are **AFFIRMED**.

# I.  BACKGROUND

## A.  Procedural History

Howell's first application for supplemental security income was denied by an ALJ on November 8, 2010, and the Appeals Council denied review. (*See* Tr. 77.)[1] On April 8, 2011, at the age of 34, Howell protectively filed a second application asserting that he became unable to work on July 4, 1988. (*See* Tr. 76, 129.) The Commissioner initially denied his disability application on May 23, 2011. (Tr. 76.) Howell then requested an administrative hearing, and on May 21, 2012, he appeared with counsel before ALJ Ronald Herman. (Tr. 46–66.) In a June 8, 2012 decision, ALJ Herman found that Howell was not disabled within the meaning of the Social Security Act. (*See* Tr. 32–30.) The ALJ's decision became the final decision of the Commissioner on June 21, 2013, when the Social Security Administration's Appeals Council denied Howell's request for review. (Tr. 6.) Howell filed this suit on August 12, 2013. (Dkt. 1, Compl.)

## B.  Testimony at the Administrative Hearing

At the administrative hearing before ALJ Herman, Howell testified that he had earned his GED, that he had never held a job for at least six months, and that he had spent fourteen years incarcerated (for "mostly fighting") but had been out of prison for three to four years. (Tr. at 50.) He said he spent his time caring for his son, now 14 months old, and working on motorcycles. (*Id.* at 52–53.)

Howell testified that he was unable to work because of anxiety, panic attacks, and back pain. (Id. at 51, 56.) He said he experienced anxiety 15 to 20 days out of a month, and panic

---

[1] The transcript of administrative proceedings filed by the Commissioner (Dkt. 11) is cited as "Tr."

attacks 10 days in a month. (*Id.* at 57–58.) He said he could not work because he gets anxious being around people and being in unfamiliar places. (*Id.* at 51, 53, 55–56.) He also testified that he had difficulty concentrating and gets fidgety, such that he cannot sit through a whole movie, but he could concentrate on fixing a motorcycle for one to two hours straight. (*Id.* at 59.) He also mentioned memory problems, such as forgetting where he put his screwdriver when he just set it down. (*Id.* at 58.) And he testified to anger problems, stating that he had been in jail for "hit[ting] a guy" "about a month ago." (*Id.* at 60.)

After Howell testified, the ALJ questioned a vocational expert ("VE") about job availability for a hypothetical individual "vocationally situated as is the claimant," who could lift 20 pounds occasionally and 10 pounds frequently; could stand or walk up to 6 hours and sit up to 2 hours of an 8-hour workday; required the option to sit or stand at will; should have as little contact as possible with the public, coworkers, or supervisors, and at most only occasional contact; and should be limited to simple, routine, and repetitive types of work with few, if any job changes. (*Id.* 63–64.) The VE said that jobs would be available in the state of Michigan for such an individual, such as 1,500 jobs as a packer; 1,800 jobs as a production inspector, and 4,000 jobs in office settings. (*Id.* at 64.) But when the ALJ asked whether there would be jobs available for such an individual if he had to miss at least three days of work per month due to anger management and difficulty dealing with people, the VE said no. (*Id.*) And when Howell's attorney asked whether there would be jobs available for a hypothetical individual of the age, education, and work experience of the claimant who could not tolerate even superficial contact with supervisors and coworkers, the VE said no. (*Id.* at 65.)

### C. Medical Records

Because Howell is bound by the Commissioner's prior determination that he was not disabled as of November 8, 2010, *see* 20 C.F.R. § 416.1455, and he has not challenged ALJ Herman's decision not to reopen that determination (*see* Tr. 32), the Court will focus on the medical evidence that relates to Howell's condition after that date.

Most of the evidence for the relevant period consists of notes from Howell's treating psychiatrist Dr. Kishore Kondapaneni and his nurse. Howell saw them for medication reviews about every four weeks. (Tr. 291–295, 408–413, 436–442). The notes consistently indicate a diagnosis of Major Depressive Disorder, Impulse Control Disorder, and ADHD. (*See id.*) Howell was taking Adderall, Trileptal, and Xanax. (*See id.*) In October 2011 his Adderall was increased from 10 milligrams twice a day to 15 milligrams twice a day because he complained of difficulty sustaining attention in activities, distractibility issues, and hyperactivity. (Tr. 439.)

Dr. Kondapeneni's notes generally indicate no depressive symptoms and significant improvement in anxiety. In December 2010 Howell was still experiencing panic attacks (Tr. 294) but he denied having any panic attacks in October and December 2011 (Tr. 438, 440) and in April 2012 said his anxiety was "under control" (Tr. 413). As to Howell's anger issues, he sometimes reported improvement—for example, in December 2010, "anger is much better now" (Tr. 294), and in February 2012, "anger is under control" (Tr. 410). But he also reported major relapses. The notes for January 2011 state "just got out of jail." (*Id.* at 293.) And in March 2012, he reported two fights in the previous month. (Tr. 412.)

There were also ups and downs in Howell's ADHD symptoms. In November 2010 he reported "that he has noticed some improvement with taking the Trileptal as well as the Adderall and in general he feels that he has been stabilizing." (Tr. 291.) In May 2011 he said "he still has

4

trouble in concentration." (Tr. 408.) In August 2011 he reported "mild difficulty sustaining attention," "mild distractibility issues," and "mild problem with organization" (Tr. 436) and these symptoms increased to a "moderate" level in October (Tr. 438). But after his Adderall was increased he reported in December that it "really helped with focus and concentration." (Tr. 440.) In February 2012 he said focus and concentration were "good" and mentioned rebuilding motorcycles. (Tr. 410.)

In April 2012, Howell had "no complaints," indicated that "his symptoms are stable," and said that "things are going much better now that he secured a dependable job that will last awhile, he tears down trailers and moves them." (Tr. 413.)

On April 30, 2012, Dr. Kondapaneni completed an assessment of Howell's "ability to do mental work-related activities" on a form provided by Howell's attorney. (Tr. 425–27.) He indicated that Howell had moderate limitations in his ability to deal with work stresses and maintain attention and concentration; mild limitations in relating to coworkers, dealing with the public, interacting with supervisors, using judgment, dealing with work stressors, and functioning independently; and no limitations in following work rules. (*Id.* at 425.) He also indicated that Howell had moderate limitations in his ability to understand, remember, and carry out complex or detailed job instruction, but no limitations with respect to simple job instructions. (*Id.* at 426.) He said that Howell had experienced three episodes of decompensation (defined as exacerbation or temporary increases in symptoms or signs accompanied by loss of adaptive functioning), each of extended duration. (*Id.* at 426–27.) And he indicated that Howell had no limitations in activities of daily living, mild limitations in maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace. (*Id.* at 426.)

5

It does not appear that Howell was regularly receiving any treatment for his back pain during the relevant period. In June 2011 he saw physician assistant Brent Maze at Bayside Community Health Center "to establish care." (Tr. 392.) He complained of back and right leg pain and said he had been taking his dad's Vicodin, which helped, and he wanted a prescription for it. (*Id.*) Maze prescribed rest, moist heat, and gabapentin. (Tr. 393.) He also ordered x-rays of Howell's spine. (*Id.*) At the hearing, Howell testified that he was sent for x-rays three times but had not yet been able to have them taken due to a mix-up in getting the order. (Tr. 55.)

Also in the record are notes from two emergency room visits. In December 2010 Howell went to the emergency room for acute gastroenteritis and anxiety. (Tr. 277–90.) He was treated with Ativan, Toradol, and Zofran and discharged. (Tr. 277.) And in February 2012 he went to the emergency room complaining of chest pain, dizziness, and nausea. (Tr. 395.) An EKG showed atrial flutter. (*Id.*) He saw a physician assistant for follow-up five days later. (Tr. 418–19.) He complained of nausea, abdominal pain, back pain, and random pain in his arms. (Tr. 419.) Chest and back x-rays were ordered but are not part of the record. (*Id.*)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act, disability insurance benefits and supplemental security income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (DIB); 20 C.F.R. § 416.905 (SSI).

6

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1520, 416.920. "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Here, ALJ Herman first found that although Howell alleged that he had been disabled since 1988, there was no basis to reopen the Commissioner's finding, on a prior application, that Howell was not disabled through November 8, 2010. (Tr. 32.) The ALJ then turned to the five-step sequential evaluation of Howell's allegation of disability. At step one, ALJ Herman found that Plaintiff had not engaged in substantial gainful activity since April 8, 2011, the application date. (Tr. at 34–35.) At step two, he found that Plaintiff had the following severe impairments:

7

"alleged chronic neck pain; alleged chronic lumbar pain; history of asthma; gastroenteritis; inattentive attention deficit disorder; recurrent major depression; social anxiety disorder; panic disorder with agoraphobia; anti-social personality disorder; impulse control disorder; intermittent explosive disorder; and substance abuse." (Tr. 35.) He found that there was insufficient evidence of bipolar disorder and schizophrenia. (*Id.*) Next, the ALJ concluded that Howell did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 35–37.) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), meaning that he can lift 20 pounds occasionally and 10 pounds frequently and can stand or walk up to 6 hours and sit up to 2 hours of an 8-hour workday.[2] He also found Howell had the following additional limitations:

> The claimant requires the option to sit or stand at will without taking him "off task" for more than 10% of the workday. The claimant can have occasional, preferably as little as possible, contact with the public, coworkers, and supervisors. He can perform simple, routine, repetitive types of work with few workplace changes.

---

[2] **Error! Main Document Only.**The RFC category of light work is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b). Social Security Ruling 83-10 further defines "a good deal of walking or standing" as "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, **Error! Main Document Only.**1983 WL 31251, at *5. The ruling also adds: "The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work." *Id.*

8

(Tr. 37–40.) At step four, the ALJ found based on vocational expert testimony that Plaintiff had no past relevant work. The ALJ then found that considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs in significant numbers in the national economy that he could perform. (Tr. 41–42.) The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act from April 8, 2011, the date the application was filed, through June 8, 2012, the date of his decision. (Tr. 42.)

## II.  STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

9

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512–13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## III. ANALYSIS

Plaintiff argues that the ALJ's decision suffers from the following errors: (1) the ALJ did not consider records that were submitted by counsel but not incorporated into the record until they were submitted again to the Appeals Council (Pl.'s Br. at 6–7, 27–29); (2) he failed to give good reasons for rejecting or failed to address portions of a treating psychiatrist's opinions (*Id.* at 16–20); (3) he failed to find that Plaintiff's IQ score of 77 constituted a severe mental impairment (*Id.* at 23–25); (4) the ALJ's characterization of Plaintiff's activities of daily living was not supported by substantial evidence (*Id.* at 7–9, 20–22); and (5) the mental RFC was not supported by substantial evidence (*Id.* at 6–16). He also argues that the Appeals Council erred in failing to address the evidence not considered by the ALJ. (*Id.* at 27–29.) Defendant argues that the evidence omitted from the record before the ALJ was not material (Def.'s Br. at 12–13); that the ALJ appropriately weighed the treating psychiatrist's opinions (*Id.* at 14–16); and that substantial evidence supports the ALJ's RFC (*Id.* at 13–20). Upon review of the record and after

10

considering each of these arguments, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole.

### A.  Evidence Not Considered by the ALJ

Plaintiff's counsel says that he "submitted psychiatric treatment records from MPBA for the time frame of June 1, 2011 through January 11, 2012 to the hearing office, but the hearing office did not incorporate these records into the [administrative record]." (Pl.'s Mot. at 27.) These treatment notes were part of the record before the Appeals Council, and Plaintiff argues that "[t]he Appeals Council erred in failing to note that new and material [evidence] had been submitted and in failing to address the issue of whether the new and material evidence warranted reopening of the ALJ Decision." (*Id.* at 29.) But because the Appeals Council denied Howell's request for review (Tr. 6), it is the ALJ's decision that is the final decision of the Commissioner subject to review by this Court. *See* 42 U.S.C. § 405(g); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Court must decide whether to remand for the ALJ to consider this omitted evidence.

Under a portion of the Social Security Act known as "sentence six," a district court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Evidence is not material unless there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with it. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F. 2d 709, 711 (6th Cir. 1988).

It does appear that these records, Exhibits B11F and B12F (Tr. 431–2, 436–44), were submitted by Plaintiff's counsel before the May 21, 2012 hearing, but they were not addressed in

11

the ALJ's decision and were not made part of the administrative record until counsel resubmitted them in October 2012. (*See* Tr. 48 (counsel's statement at the hearing that he submitted "updated MPBA records through April of 2012"); *see also* Tr. 401–2, 430, 433, 434 (counsel's cover letters submitting and resubmitting the evidence).) Therefore, there is good cause for the failure to incorporate the evidence into the record before the ALJ, at least on the part of Plaintiff's counsel.

But the Court finds that remanding for an ALJ to consider the evidence is not required because there is no reasonable probability that an ALJ would have reached a different decision had he considered the evidence. Importantly, these missing records are Dr. Kondapaneni's treatment notes regarding Howell. As the Commissioner points out, "the ALJ actually gave controlling weight to Dr. Kondapaneni's functional capacity assessment, which post-dated all of the records at issue." (Def.'s Mot. at 12.) Because the ALJ reviewed and addressed Dr. Kondapeneni's subsequent opinion based on that treatment, the Court fails to see why the additional underlying records would be likely to result in a different outcome should the Court remand. *See Ward v. Comm'r, Soc. Sec.*, 72 F.3d 131 (table), No. 95-2140, 1995 WL 712763 (6th Cir. 1995) (finding evidence that was "merely cumulative" of other evidence in the record was not new material evidence requiring remand). If the ALJ had rejected Dr. Kondapeneni's opinion for lack of supporting evidence, these records would clearly be material. But (as discussed below) the only part of the opinion he did not credit was Dr. Kondapeneni's indication (by marking a check box) that Howell had experienced three episodes of decompensation. (Tr. 40.) Howell does not argue, and the Court does not discern, that there is evidence of three episodes of decompensation of extended duration in these records.

12

Nonetheless, Plaintiff contends that in light of these records, substantial evidence does not support the ALJ's conclusions that "claimant's attention deficit was stable in April 2011" (Tr. 38), that in April 2011 Plaintiff "did not appear to be depressed any longer" (Tr. 39), that Plaintiff "was not having any stress and did not appear to be anxious in 2012" (Tr. 39), and that "his impulse control disorder was stable with medication in April of 2011" (Tr. 39). The Court does not agree.

First, the records at issue cover the period from June 2011 to January 2012, so they cannot contradict the ALJ's conclusions about Plaintiff's condition in April 2011. But they also do not suggest that Plaintiff's condition worsened significantly after April 2011. The records document Howell's medication reviews with Dr. Kondapeneni or his nurse on June 1, 2011, August 9, 2011, October 25, 2011, December 15, 2011, and January 11, 2012. On each of these occasions, Howell "denie[d] any depression." (Tr. 431, 436, 438, 440, 442.) He did report anxiety at three of the five visits (June, August, and January), but Dr. Kondapeneni described it as "moderate" or "mild," and Howell did not report any panic attacks. (Tr. 431, 436, 442.)

Regarding attention deficit disorder, Howell reported "mild difficulty sustaining attention," "mild distractibility issues," and "mild problem with organization" in August (Tr. 436) and these symptoms increased to a "moderate" level in October (Tr. 438). But after his medication was increased, he reported that it "really helped with focus and concentration" (Tr. 440) and he denied any symptoms of ADHD in both December and January (Tr. 440, 442).

As to Howell's impulse control disorder, he reported "mild anger issues" in August (Tr. 436), but denied having any problems with anger at every other visit (Tr. 431, 438, 440, 442). He also denied having any "behavior issues" in October, December, and January. (Tr. 438, 440, 442.) Howell did go to jail for fighting during this period, according to these medical records.

13

(*See* Tr. 440.) But the ALJ noted, after stating that Howell's "impulse control disorder was stable with medication in April 2011, that Howell "had another relapse in March 2012 when he was drinking, fighting, and sent to jail." (Tr. 39.) The Court is therefore not persuaded that another such incident in November 2011 would have altered the Secretary's decision. Altogether, the records do not evidence a significant change in Howell's mental impairments when compared to the evidence before the ALJ.

Plaintiff also argues that the ALJ's statement that "Plaintiff was successfully treated in prison and that he did not require psychiatric drugs while he was sober," are contradicted by these missing records, which Howell says show he received ongoing psychiatric treatment, including drugs, in 2011 and 2012 (and therefore, Howell apparently argues, he was not "cured" by his treatment in prison). (Pl.'s Br. at 7.) But the ALJ had the records of Howell's ongoing psychiatric treatment on approximately a monthly basis on either side of that gap: from November 2010 through May 2011 and February 2012 through April 2012. (*See* Tr. 291–95, 408–13.) And each treatment note, before and after the gap, listed his current medications as Trileptal, Adderall, and Xanax. (*Id.*) Thus, the missing records are unlikely to result in a different outcome on remand.

As discussed further below, the Court finds that substantial evidence in the record as a whole, including these records that were not considered by the ALJ, supports the ALJ's finding that Howell was not disabled during the relevant period. The Court therefore agrees with the Commissioner that the records are not material, and the ALJ's failure to consider them does not justify remand or reversal.

**B.  Treating Psychiatrist Opinion**

Plaintiff takes issue with the ALJ's handling of the opinion by Howell's treating psychiatrist, Dr. Kondapaneni. Howell argues that it is not clear which portions of the opinion the ALJ gave controlling weight to, and that the RFC did not account for Dr. Kondapaneni's opinion that Howell had moderate limitations in dealing with work stressors and maintaining concentration, attention, persistence, and pace. (Tr. 16–19.)

The opinion of a treating physician must be given controlling weight if it is well-supported and not inconsistent with the record. *See* 20 C.F.R. § 416.927(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544. Even if it is not given controlling weight, the opinion of a treating physician is subject to a rebuttable presumption of deference. *See* 20 C.F.R. § 416.927(c)(2); *Gayheart*, 710 F.3d at 376; *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544. To rebut the presumption, the ALJ must show that substantial evidence supports not deferring to the treating source. *See Rogers*, 486 F.3d at 246. This includes demonstrating that he considered the non-exhaustive list of factors in 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c). *See Rogers*, 486 F.3d at 242 ("When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors."); *see also Wilson*, 378 F.3d at 544; Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4. In fact, the requirement to provide "good reasons" for the weight assigned to a treating-source opinion is a substantial procedural right, abridgement of which warrants remand even when substantial evidence

15

supports the ALJ's ultimate disability determination. *See Rogers*, 486 F.3d at 243; *Wilson*, 378 F.3d at 544.

ALJ Herman assigned controlling weight to a portion of Dr. Kondapeneni's opinion. The ALJ said:

> Kishore Kondapaneni, M.D., the claimant's psychiatrist, indicated that the claimant had no marked mental functional limitations. Dr. Kondapeneni indicated that the claimant could follow simple work instructions with mild social limitations (B10F). Dr. Kondapaneni is a "treating source" because he has had an ongoing treatment relationship with the claimant for several years (SSR 96-2p). This portion of Dr. Kondapaneni's opinion is given controlling weight in this case because the degree of limitation that he assigned the claimant was consistent with the claimant's academic tests, history of violence, and the claimant's ability to rebuild motorcycles.
>
> Dr. Kondapaneni also indicated that the claimant had three episodes of decompensation each of extended duration (B10F). As mentioned earlier, there was no evidence that the claimant had an episode of decompensation. Accordingly, this portion of Dr. Kondapaneni's opinion was given little weight.

(Tr. 40.) It seems clear to the Court, especially when viewing the ALJ's decision with the deference required, that the ALJ intended to assign controlling weight to all of Dr. Kondapaneni's opinion except her indication that Howell has three episodes of decompensation.

The Court also finds that the RFC formulated by the ALJ sufficiently accounted for Dr. Kondapaneni's opinion by providing that Howell could "have occasional, preferably as little as possible, contact with the public, coworkers, and supervisors" and could "perform simple, routine, repetitive types of work with few workplace changes." (Tr. 37.) The restrictions on contact with people, complex work, and workplace changes adequately addressed Howell's limitations in dealing with workplace stress, which Dr. Kondapeneni indicated were "moderate," or a three on a five-point scale. (Tr. 425.) And Howell's moderate limitations with respect to maintaining concentration, persistence, or pace, as assessed by Dr. Kondapeneni (Tr. 425–6),

16

were adequately addressed by the restriction to "simple, routine, repetitive types of work." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (finding RFC that included restrictions on quotas, complexity, and stress adequately accounted for ALJ's finding that claimant often had difficulty concentrating); *White v. Comm'r of Soc. Sec.*, No. 12-CV-12833, 2013 WL 4414727, at *12 (E.D. Mich. Aug. 14, 2013) (summarizing case law and concluding that "difficulties in concentration, persistence, or pace . . . may, depending on the case, be accounted for by a restriction to 'unskilled work'"). Notably, Dr. Kondapeneni specifically indicated that Howell was capable of understanding, remembering, and carrying out simple job instructions. (Tr. 425.) And the ALJ's assessment was also informed by Howell's testimony that "he could concentrate on fixing a motorcycle for one to two hours straight." (*Id.* at 59.) The ALJ therefore did not err by not including greater restrictions in the RFC regarding concentration, persistence, and pace.

### C.  Howell's IQ

Howell maintains that the ALJ erred by failing to recognize his IQ of 77 as a separate cognitive limitation that constituted a severe mental impairment. (Pl.'s Mot. at 23.) He points to a December 2005 assessment by an education specialist that indicated Howell's full scale IQ was 77. (*Id.*; *see* Tr. 190.) The assessment was conducted to determine whether Howell was eligible for accommodations during testing for his GED. (*See* Tr. 190.)

It is well established in Sixth Circuit precedent that when at least one impairment is found severe, it is unnecessary to decide whether the ALJ erred in failing to find other impairments were severe. *See, e.g.*, *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). According to the regulations, upon determining that a claimant has one severe impairment, the ALJ must continue with the remaining steps in the disability evaluation. 20 C.F.R. § 1520(a)(4). The ALJ can, and in

17

fact must, consider all of the claimant's impairments, both severe and non-severe, in completing the evaluation. *See* SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). So if the ALJ finds at least one severe impairment and then properly proceeds with the analysis, any failure to find additional severe impairments at step two cannot constitute reversible error. *See Fisk*, 253 F. App'x at 584*; Maziarz*, 837 F.2d at 244.

Although the ALJ did not find Howell's impaired cognitive functioning was a severe impairment, he did consider the evidence relevant to such an impairment, including Howell's IQ:

> In terms of the claimant's inattentive attention deficit hyperactivity disorder, the claimant had allegedly suffered from attention deficit hyperactivity disorder since childhood. He allegedly attended school until the 9th grade in special education. He later earned his GED while incarcerated. The claimant's attention deficit was stable in April 2011. Upon psychiatric evaluation, the claimant's cognition was intact. His memory was not impaired. He knew that "8 x 3 = 24." While counting down by serial sevens he answered "93 and 86." Later, academic tests demonstrated that the claimant had a full scale IQ of "77." He could read at the second grade level, write at the fourth grade level, and do first grade mathematics. The claimant reported that Adderall worked well in helping him to concentrate. In February 2012, upon psychiatric evaluation, the claimant's memory was intact for recent and remote events. His concentration was good. He was able to understand, remember, and carry out the tasks required to rebuild motorcycles (testimony, B1F, B3E, B3F:2, B4F:88, B7E, B7F, and B9E).

(Tr. 39.)

The Court finds that the ALJ properly considered Howell's IQ score of 77 in the context of all of the evidence, not in isolation. In *Colwell v. Chater*, 98 F.3d 1341 (table), No. 95-6179, 1996 WL 557773 (6th Cir. Sep. 30, 1996), a panel of the Sixth Circuit rejected the claimant's argument that "because he had a performance IQ of seventy-five, the administrative law judge was required to include the fact that [claimant] was severely mentally impaired in his hypothetical question to the vocational expert." *Id.* at *3. The court first addressed *Salmi v.*

18

*Secretary of Health & Human Services*, 774 F.2d 685, 693 (6th Cir. 1985), in which the court of appeals said that Social Security Ruling 82–55 "indicates that the Secretary considers IQs less than 80 as qualifying as a severe impairment." *Id.* at 793. The *Colwell* panel noted that SSR 82-55 was no longer in effect, and also that "there was substantial evidence in the record that the claimant in *Salmi* had attempted a variety of jobs, failing at each, and simply could not function in a working environment. No such evidence exists here. Second, we believe that the administrative law judge's question to the vocational expert, when viewed in its entirety, adequately portrayed Colwell's reduced mental capabilities." *Id.*

Similarly here, the ALJ considered Howell's IQ score in light of evidence that he earned his GED (Tr. 50), he could work on motorcycles (Tr. 53 (Howell's testimony that "my neighbor, he brought me over a motorcycle the other day that they couldn't get running for a year and I got it running in one day for him"), 410 (treatment notes stating that Howell said "he is re-building motorcycles")), and that, as measured by the education specialist in 2005, he "could read at the second grade level, write at the fourth grade level, and do first grade mathematics" (*see* Tr. 189). Based on all of this information, the ALJ formulated an RFC that included a restriction to "simple, routine, repetitive types of work with few workplace changes." (Tr. 37.) The ALJ's assessment of Howell's cognitive abilities was supported by substantial evidence.

### D.  Activities of Daily Living

Howell next argues that the ALJ's characterization of Plaintiff's activities of daily living is not supported by substantial evidence. (Pl.'s Mot. at 7–9, 20–22.) Specifically, he argues that the ALJ improperly relied on Howell's "successful" incarceration, attempts to find employment, relationship with his girlfriend and children, and work on motorcycles and tearing down mobile homes as evidence that Howell was not disabled. (Pl.'s Mot. at 7–8, 22.) The Court agrees that

19

such activities do not necessarily establish that Howell is able to do "sustained work-related physical and mental activities in a work setting . . . 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. 96-8p 1996 WL 374184, at *1; *see Rogers*, 486 F.3d at 248 (finding the claimant's ability to "drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news" were "somewhat minimal daily functions" that were "not comparable to typical work activities.").

But Howell's characterization of the ALJ's findings is not accurate. First, the Court does not agree with Howell that "[t]he ALJ's sardonic description of Plaintiff 'successfully' serving prison terms suggests that the ALJ used Plaintiffs felony record as a basis for finding him to be not disabled." (Pl.'s Br. at 21.) The ALJ found Howell's prison record notable because although he "went for years without psychiatric treatment" in prison, he appeared able to function normally within that setting—not requiring separation from the general population, receiving visits and writing letters, obtaining his GED, and ultimately completing his sentence and securing release. (*See* Tr. 40.)

The ALJ noted that Howell "argued that his psychiatric records from prison did not portray his true limitations because he was contained in a secure environment where his access to drugs was limited," but said that he "was not persuaded by this argument because there was ample evidence that the claimant had many successes following his release from prison three years ago." (Tr. 40.) In particular, the ALJ pointed out that Howell "had embraced family life and was able to care for the premature newborn child that was left on his doorstep," "was awarded full sole custody of his children" and "was able to establish a new relationship" and, with his girlfriend, "together to care for three young children." (*Id.*; *see* Tr. 51–3 (Howell's testimony about his family situation and that during the day "Mostly I take care of my son")).

20

The ALJ also noted Howell's testimony that he was "actively seeking employment," and the evidence that Howell "was able to work construction, rebuild motorcycles, and tear apart mobile homes." (*Id.*)

It does not appear that the ALJ viewed this information as evidence of a demonstrated ability to work a 40-hour week. Rather, the ALJ was using it to assess Howell's credibility regarding his mental limitations, and found that it showed they were less than claimed. This court must "consider the ALJ's decision determinative if there is 'such relevant evidence as a reasonable mind might accept' as sufficient to support the ALJ's conclusion." *Bass*, 499 F.3d at 509 (quoting *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)). The Court finds that the ALJ's reasoning is supported by substantial evidence.

### E.  Mental RFC

Finally, the Court is not persuaded by Howell's argument that the mental RFC is not supported by substantial evidence. (Pl.'s Mot. at 6–16.) Most of Howell's points have been addressed. The Court will address the remaining points.

Howell takes issue with the ALJ's statement that "the claimant was successfully treated in prison and did not require psychiatric drugs while he was sober." (Tr. 40; *see* Pl.'s Mot. at 7.) The Court has reviewed the records from the Michigan Department of Corrections and finds the ALJ's statement is supported by substantial evidence. Howell was admitted to the Outpatient Mental Health Treatment Program ("OPT") upon his arrival in prison in September 2004. (Tr. 311.) He was continuously treated until June 2006 when he was discharged from the program. (Tr. 382.) The treatment notes consistently indicate that he was staying sober and working hard on his treatment, and that although he was prescribed psychiatric drugs, he refused to take them. He told one of his treatment providers: "he took one or two doses of his medication and felt like

21

a zombie and didn't like the feeling at all, would prefer to be without them. States he doesn't feel like the problem is present when he is not using street drugs." (Tr. 341.) Upon his discharge from OPT in June 2006, the discharge summary stated:

> Mr. Howell was admitted to the OPT on 9/28/04. He was transferred from KCF/OPT to IBC/OPT on 3/15/06. Since his transfer he was pleasant and cooperative. He communicated well with staff during individual sessions. He asked questions and answers questions during TTM. He demonstrated well during the scheduled TTM every ninety days and prn. He performed well without medications for over two years. He did not c/o hearing voices nor any suicidal ideation except of occ. panic attacks which he states are not unbearable. It must be noted at this point that I/M was not on any medication for the last two years and is performing well without it. Therefore, the TTM feels that his Axis l diagnosis [Mood Disorder NOS] is in remission and also has been changed with the help of the psychiatrist. It is qui[te] evident that his manners at this point are within normal hence I/M will be discharged from the OPT at this point.

(Tr. 385.) The Court finds that the ALJ's conclusion that Howell "did not require psychiatric drugs while he was sober," at least while he was in prison, and that Howell was "successfully treated" in prison are reasonable interpretations of this evidence.

Howell also disagrees with the ALJ's comments about Howell's use of marijuana. The pertinent portion of the ALJ's decision states:

> In terms of the claimant's polysubstance dependence, the claimant had a history of abusing alcohol, cigarettes, cocaine, marijuana, and "street drugs." His drug use often led to violent behavior and incarceration. The claimant received drug counseling while he was in prison. After his release, the claimant continued to abuse his drug of choice, Marijuana, every day. His nurse advised him not to use Marijuana along with his prescribed medications. The claimant did not follow her advice. He continued to smoke, drink, and use marijuana. As mentioned earlier, the claimant was drinking and fighting when he returned to jail in March 2012. This evidence supports the above-specified mental limitations.

(Tr. 39 (citations omitted).) Howell notes that the ALJ "failed to make any finding that Plaintiff's use of marijuana was material to Plaintiff's psychiatric symptoms." (Pl.'s Mot. at 11.) Howell presumably refers to the Social Security Act provision that states: "An individual shall not be

22

considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). But, as Howell notes, the ALJ did not make this finding, and it does not appear to the Court that he was relying on that provision. Rather, he seems to be summarizing the evidence relevant to Howell's substance abuse—one of the impairments that the ALJ found was severe—for the relevant period and determining that the impairment was present.

Howell next argues that the ALJ's discussion of his marijuana use is not supported because his records of mental health treatment for the relevant period "demonstrate compliance with psychiatric treatment." (Pl.'s Mot. at 11.) The Court agrees that Howell was substantially in compliance with his psychiatric treatment during the relevant period, but there is also evidence that he continued to smoke marijuana and drink, at least occasionally. (*See* Tr. 291, 294, 410, 412.)

In light of all the evidence and having considered all of Howell's arguments, the Court finds that the mental RFC formulated by the ALJ was within the "zone of choice" within which the Court will not interfere. The RFC is supported by substantial evidence in the record as a whole.

**IV. CONCLUSION AND ORDER**

For the reasons set forth above, Plaintiff's Motion for Summary Judgment (Dkt. 17) is

**DENIED**, Defendant's Motion for Summary Judgment (Dkt. 24) is **GRANTED**, and the

findings of the Commissioner are **AFFIRMED**.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  March 24, 2015


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the
attorneys and/or parties of record by electronic means or U.S. Mail on March 24, 2015.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson